Filed 8/13/26  Madera Group Investments v. Casa Madero WeHo CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MADERA GROUP INVESTMENTS, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CASA MADERA WEHO, LLC, <br><br> Defendant and Respondent. | B350484 <br><br> (Los Angeles County Super. Ct. No. 24STCP03184) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph Lipner, Judge.  Affirmed.

Allen Matkins Leck Gamble Mallory & Natsis, Scott J. Leipzig, Shauna E. Woods, and Anita Chirnian for Plaintiff and Appellant.

Greenberg Traurig, Michael R. Hogue, and J. Andrew Schaffer for Defendant and Respondent.

_____

**INTRODUCTION**

Madera Group Investments, LLC (Investment Group) is a member of Casa Madera WeHo, LLC (Casa Madera).[1] The Investment Group asked to inspect and copy records from Casa Madera under Corporations Code section 17704.10.[2] The Investment Group initially requested 16 categories of documents. After repeated requests from the Investment Group, Casa Madera provided copies of some tax returns and other financial documents.

Dissatisfied with Casa Madera's response, the Investment Group filed a petition for writ of mandate alleging Casa Madera did not produce all documents responsive to the Investment Group's inspection requests. The court denied the petition, ruling that certain of the Investment Group's requests were beyond the scope of documents Casa Madera was statutorily required to provide. The court also ruled that Casa Madera complied with certain of the requests and that the Investment Group had not shown Casa Madera was withholding responsive documents. The Investment Group also sought an order requiring Casa Madera to produce an additional six categories of documents, a request the

---

[1]    A limited liability company "consists of at least two members who own membership interests. Although the company has a separate legal existence from its members, the members actively participate in the management and control of the company." (*Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 273.)

[2]    Undesignated statutory references are to the Corporations Code.

2

court denied because the Investment Group had not previously requested the documents in those categories. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Investment Group Requests Documents from Casa Madera*

Casa Madera operates a restaurant in Los Angeles. The Investment Group is a member of and an investor in Casa Madera.

In May 2024 the Investment Group requested access to documents under section 17704.10 (the inspection request) "for purposes of assessing the value of its membership interest and the risks associated with its investment" in Casa Madera. The Investment Group requested 16 categories of documents:

(1) "Any and all contracts and other documents related to agreements with any other third parties not specifically referenced herein, which require the use of [Casa Madera's] assets, including but not limited to its facilities, personnel, [food]/beverage supplies, or other property;

(2) "Any and all contracts, agreements, invoices, receipts, or other document of any kind related to the rental of the . . . restaurant to any third party for any private events during 2023-2024;

(3) "Any and all contracts, invoices, accountings, ledgers, or other document of any kind related to agreements with InKind Hospitality, Dorsia, and Capital One Dining for discounts/rewards redeemable at the Las Vegas restaurant during 2023-2024;

3

(4) "Any and all documents detailing the revenues received from the immediately preceding two categories of contracts/agreements reflecting the fees or rates charged, the dates of such payments, and the account(s) into which any revenues were deposited;

(5) "Any and all management, marketing, or consulting agreements between Casa Madera . . . and Noble 33 Holdings, Noble 33 Management, The Madera Group, or any other affiliated entity for the management, marketing, or operations of the . . . restaurant;

(6) "General ledger report for Casa Madera . . . for the years 2023-2024;

(7) "Any and all financial reports reflecting expenses incurred for travel, meals, entertainment, and marketing, and/or any expense reimbursement paid to any person in relation to the same;

(8) "Any and all consulting contracts with any consultants located outside of the United States;

(9) "Any and all settlement agreements entered into by Casa Madera . . . with any third parties and any and all financial reports reflecting the payments of any monies pursuant to any settlement agreement;

(10) "Detailed financial reports reflecting the payment of any compensation, expense reimbursement, commissions, or other payments of any nature made to or on behalf of any or all of Madhiar Karamooz, Noble Ranch, Tosh Berman, Mikey Tahna, Sacha Tahna, Jessica Nazerenus, Tiki Camaj, Ali Jassmin, David Silverman, Follow Me Network, any

‘OnlyFans’ model, and any individual compensated for marketing services;

(11) “Complete federal income tax returns for Casa Madera . . . , including all schedules and attachments, for the year 2023;

(12) “Current Operating Agreement (as amended/restated) and Capitalization Table for Casa Madera;

(13) “A complete list of all past and current employees and their roles, start dates, and compensation and any termination dates;

(14) “A complete list of all food and beverage vendors providing any services or products to the restaurant for resale in any way;

(15) “A current QuickBooks company backup file or its equivalent for Casa Madera . . . , including the administrative username and password; and

(16) “Any and all documents reflecting payments made by Casa Madera . . . to its managers and/or the individual members of its managers, and any employee or independent contractor of its managers, including but not limited to documents reflecting the payment date, recipient, payment amount, purpose, and receipts supporting the purpose and validity of the underlying expense or claimed service.”

Casa Madera did not initially produce any documents in response to the inspection request.

On June 7, 2024 the Investment Group sent a letter to Casa Madera and demanded Casa Madera respond to the inspection request by June 14, 2024. Casa Madera gave the

5

Investment Group copies of "various business records . . . limited to tax returns, tax extension forms, various quarterly financial summaries, and organizational documents."

On July 3, 2024 the Investment Group wrote to Casa Madera again and stated that, because Casa Madera failed to produce documents responsive to 14 of the 16 categories in the inspection request, Casa Madera's response was "overwhelmingly deficient." The Investment Group demanded Casa Madera comply with the inspection request no later than July 10, 2024. Casa Madera did not respond.

> B. *The Investment Group Files a Petition for Writ of Mandate Alleging Casa Madera's Document Production Was Deficient*

In August 2024 Casa Madera filed an action in superior court against the Investment Group, asserting causes of action for, among other things, declaratory relief, breach of contract, defamation, and interference with prospective economic advantage. The Investment Group filed this writ proceeding in October 2024 and the operative verified first amended petition for writ of mandate in December 2024. The Investment Group alleged Casa Madera refused to provide copies of or access to the documents the Investment Group requested and asked the court to order Casa Madera to comply with the inspection request.

In its opening brief in support of the petition the Investment Group argued that section 17704.10, subdivisions (a) and (b), authorized it to obtain all records "relating to the internal affairs of the limited liability company." The Investment Group argued Casa Madera failed to provide "key categories of financial information, including general ledgers, detailed expense

6

reports, balance sheets, and contracts affecting company assets—core documents necessary for assessing the value and performance of [the Investment Group's] investment." The Investment Group (inaccurately) represented it had previously requested 20 categories of documents from Casa Madera. Those categories included 14 categories from the inspection request (1-10, 13-16) and six additional categories:

(A)     "Books and records of the company for at least four fiscal years, including revenue, expenses, assets; liabilities, and balance sheets;

(B)     "Financial statements for the last six years;

(C)     "Records of capital accounts, profit and loss allocations, and member contributions and distributions;

(D)     "Internal balance sheets, tax returns, bank statements, budget forecasts, and quarterly/annual financial summaries;

(E)     "All agreements between [Casa Madera] and its managers, members, or affiliates affecting financial obligations or governance; and

(F)     "Meeting minutes and consents (critical for oversight of decision-making)."

In opposition to the petition Casa Madera argued that, because the Investment Group did not request documents in categories A through F prior to filing its petition for writ of mandate, the court should not order Casa Madera to produce those documents. Casa Madera also argued the Investment Group requested documents beyond the scope of section 17704.10, subdivision (b)(1). As relevant here, section 17701.13, subdivision (d)(7), required Casa Madera to maintain "books and

7

records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years." Casa Madera argued categories 1-5, 8-10, and 16 related to Casa Madera's relationships with third parties (i.e., external affairs), not the company's internal affairs. Finally, regarding categories 6 and 7, Casa Madera stated it fully complied with its disclosure obligations under section 17704.10.

In its reply brief the Investment Group argued categories A through F were not "new." Rather, the Investment Group maintained, those requests restated or clarified the 16 categories in the inspection request. The Investment Group also argued that, because section 17704.10, subdivision (b)(1), authorized a member to inspect "any record maintained by the limited liability company," section 17701.13 did not limit the scope of documents it could access. Finally, the Investment Group argued Casa Madera's "limited disclosure omitted general ledgers, QuickBooks files, detailed expense reports, related-party contracts, compensation data, vendor and employee lists, capital accounts, and governance documents—records central to [the Investment Group's] statutory right to inspect." Shortly before the hearing on the petition, Casa Madera gave the Investment Group a general ledger and a profit and loss statement.

C. *The Court Denies the Investment Group's Petition, and the Investment Group Appeals*

The trial court denied the petition for writ of mandate. First, the court ruled it could not compel Casa Madera to produce documents in categories A through F. The court stated that section 17704.10 authorizes a member of a limited liability

8

company to inspect documents "upon reasonable request" and that the Investment Group did not "request" the documents in categories A through F before it filed its petition.

Second, the court ruled that most of the categories in the inspection request exceeded the scope of records that sections 17704.10 and 17701.13 required Casa Madera to maintain.[3] The court ruled that categories 1 through 5 and 8 through 10 sought documents related to Casa Madera's external (rather than internal) affairs, that section 17701.13 did not require Casa Madera to maintain the documents in categories 13 and 14, and that categories 15 and 16 were overbroad. The court also rejected the Investment Group's argument section 17704.10 authorized it to inspect all documents maintained by Casa Madera.

Third, regarding categories 6, 7, 11, and 12, the court ruled that the Investment Group failed to show Casa Madera withheld responsive documents in its possession. Though the Investment Group alleged in its petition that Casa Madera failed "'to produce . . . the entirety of records identified in the'" inspection request, the Investment Group failed to offer specific evidence regarding either the documents Casa Madera produced or the documents the Investment Group believed Casa Madera withheld.

---

[3] Section 17704.10 grants a member of a limited liability company the right to inspect certain records the company is required to maintain. Section 17701.13 lists six specific categories of documents a limited liability company is required to maintain and a seventh "catch-all" category: "[t]he books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four years." (§ 17701.13, subd. (d)(7).)

9

The court denied the petition for writ of mandate on September 25, 2025. The Investment Group timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

Traditional mandamus is available to enforce a limited liability company member's right of access to company information under section 17704.10. (See Code Civ. Proc., § 1085, subd. (a) [a writ of mandate may compel a "corporation, board, or person" to perform "an act which the law specially enjoins"]; § 17704.10, subd. (f) ["a court of competent jurisdiction may enforce the duty of making and mailing or delivering the information and financial statements required by this section"]; *Perry v. Stuart* (2025) 111 Cal.App.5th 472, 487, 499 [court may issue a writ of mandate under Code of Civil Procedure section 1085 to compel production and inspection of documents under section 17704.10].) "'To obtain relief, a petitioner must demonstrate (1) no "plain, speedy, and adequate" alternative remedy exists [citation]; (2) "a clear, present, . . . ministerial duty on the part of the respondent"'; and (3) a correlative '"clear, present, and beneficial right in the petitioner to the performance of that duty."'" (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 36-37; accord, *Jessica M. v. Department of Corrections & Rehabilitation* (2026) 120 Cal.App.5th 54, 69-70.) "A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act." (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340; accord, *Siskiyou Hospital*, at p. 37.)

10

The petitioner generally has the burden of proof in a mandate proceeding under Code of Civil Procedure section 1085. (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 460; *Jessica M. v. Department of Corrections & Rehabilitation, supra,* 120 Cal.App.5th at pp. 69-70; *City of Marina v. County of Monterey* (2023) 97 Cal.App.5th 17, 30.) "'In reviewing a judgment granting or denying a writ of mandate petition, . . . [o]n questions of law, including statutory interpretation, the appellate court applies a de novo review and makes its own independent determination.'" (*Jessica M.*, at p. 70; accord, *City of Marina*, at p. 30.)

>   B.   *The Trial Court Did Not Err in Ruling Certain of the Investment Group's Requests Exceeded the Scope of Section 17704.10*

The Investment Group argues the trial court erred in denying its request for documents in categories 1-5, 8-10, and 16.[4] In particular, the Investment Group argues the court erred in ruling that, because those categories sought contracts and other information regarding Casa Madera's relationships with third parties, they did not relate to Casa Madera's "internal affairs." (§ 17701.13, subd. (d)(7).) The court did not err in interpreting "internal affairs" to exclude information regarding Casa Madera and third parties.

The California Revised Uniform Limited Liability Company Act (§ 17701.01 et seq.; the Act) provides members of a limited

---

[4]   As discussed, the Investment Group requested agreements with third parties regarding the use of Casa Madera's assets and the rental of the restaurant, along with an accounting of

liability company a limited right to access certain documents the company must maintain.  Under section 17704.10, subdivision (a), upon the request of a member, for purposes reasonably related to the interest of that member, a manager must promptly deliver a copy of the information in section 17701.13, subdivision (d)(1), (2), and (4), as well as any written operating agreement of the limited liability company.  Under section 17704.10, subdivision (b)(1), a member, for purposes reasonably related to the interest of that member, has the right to inspect and copy "any of the records required to be maintained pursuant to Section 17701.13."  Section 17701.13 requires the limited liability company to maintain specific types of documents, including "[t]he books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years."  (§ 17701.13, subd. (d)(7).)  In other words, under section 17704.10 a member of a limited liability company may only inspect the documents listed in section 17701.13, subdivision (d)(1)-(6), and documents relating to the company's "internal affairs."

The Act does not define "internal affairs," and the parties have not cited any California cases interpreting that term as

revenues received (1, 2, 4); agreements with InKind Hospitality, Dorsia, and Capital One Dining and an accounting of revenues received (3, 4); management, marketing, and consulting agreements with certain third parties (5); consulting contracts and settlement agreements with third parties (8, 9); financial reports regarding payments made to specific third parties (10); and information regarding payments from Casa Madera to its managers, individual members of its managers, and other third parties (16).

used in section 17701.13, subdivision (d)(7).  "When we interpret a statute, [o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning. . . .  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."  (*Gutierrez v. Tostado* (2025) 18 Cal.5th 222, 231, internal quotation marks omitted; accord, *Clapkin v. Levin* (2026) 119 Cal.App.5th 222, 239.)  A term's plain meaning ""as understood by the ordinary person . . . would typically be a dictionary definition.""  (*People v. Walker* (2024) 16 Cal.5th 1024, 1035.)

"Internal" in a corporate context means "of, relating to, or occurring on the inside of an organized structure."  (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/internal> [as of Aug. 13, 2026], archived at <https://perma.cc/H498-ARJB>.)  "Affairs" means "commercial, professional, public or personal business."  (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/affairs> [as of Aug. 13, 2026], archived at <https://perma.cc/QJQ8-7VQJ>.)  These definitions are consistent with the trial court's interpretation of "internal affairs" to exclude contracts between Casa Madera and third parties.  (See Uniform Limited Liability Company Act, § 104, com. ["'internal affairs'" includes "interpretation and enforcement of the operating agreement, relations among the members as members; relations between the limited liability company and a member as a member, relations between a manager-managed limited liability company and a manager, and relations between a manager of a

13

manager-managed limited liability company and the members as members"].)

The trial court's interpretation finds support in a somewhat related context. "'Under the internal affairs doctrine, California courts recognize that the law of the state of incorporation applies to an action that concerns the "internal affairs" of corporations. [Citation.] "[I]nternal affairs" are "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."'" (*EpicentRx, Inc. v. Superior Court* (2025) 18 Cal.5th 58, 70, fn. 2; see *Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645; *Wong v. Restoration Robotics, Inc.* (2022) 78 Cal.App.5th 48, 74-75; see also *Kempe v. Ocean Drilling & Exploration Co.* (E.D. La. 1988) 683 F.Supp. 1064, 1073 ["'internal affairs of a corporation'" is "defined as 'the relations inter sese of the corporation, its stockholders, directors, officers, or agents'"].)

To justify a broader definition of "internal affairs," the Investment Group points to section 1602, which grants corporate directors an "absolute right" to "inspect and copy all corporate books, records, and documents of every kind." Section 1602, however, applies to corporations; it does not expand the inspection rights of a member of a limited liability company beyond the scope of section 17704.10. Thus, the Investment Group's reliance on section 1602 and cases interpreting it is misplaced.

The Investment Group also contends section 17704.10 permits it to obtain or inspect any document that might disclose "actual mismanagement" by Casa Madera. The Investment Group argues, for example, "the controlling question is whether petitioners seek records 'for a purpose reasonably related' to their

14

membership interests," suggesting a proper purpose is all that is required to justify a member's inspection request. As discussed, section 17704.10 limits a member's inspection right to "purposes reasonably related to the interest" of that member. (§ 17704.10, subds. (a) & (b).) But that does not mean a member of a limited liability company can obtain documents beyond those authorized by sections 17704.10, subdivision (b)(1), and 17701.13. Nor, as the Investment Group asserts, did the court in *Perry v. Stuart*, *supra*, 111 Cal.App.5th 472 so hold. The court in *Perry* considered only whether, on the facts of that case, a member requested documents for purposes reasonably related to the member's interest in the limited liability company, as section 17704.10 requires. (*Perry*, at pp. 500-502.)

Citing section 18-305 of the Delaware Limited Liability Company Act, the Investment Group argues "the appropriate limitation on a shareholder's request for documentation should be that which is 'necessary and essential' to achieving a [*sic*] 'a purpose related to the member's interest.'" The analogy is inapt because the Delaware statute provides a significantly broader right of access than section 17704.10 does. The Delaware statute provides a member of a limited liability company the right to obtain, for example, "[t]rue and full information regarding the status of the business and financial condition of the limited liability company" and "[o]ther information regarding the affairs of the limited liability company as is just and reasonable." (Del. Code Ann. tit. 6, § 18-305, subd. (a)(1), (6) (2026).)

15

C. *The Trial Court Did Not Err in Ruling the Investment Group Did Not Prove Casa Madera Withheld Responsive Documents*

The trial court ruled the Investment Group failed to show Casa Madera withheld documents responsive to categories 6, 7, 11, and 12. As discussed, those categories sought a general ledger report for Casa Madera for the years 2023-2024; financial reports reflecting specific categories of expenses, such as travel, entertainment, and marketing; Casa Madera's 2023 federal income tax return; and Casa Madera's current operating agreement and capitalization table. Though the Investment Group alleged in its petition that Casa Madera "failed to produce the records required by law" and argued in its opening brief supporting the petition that Casa Madera "made only a limited and highly selective production—providing tax returns, public filings, and superficial summaries—while withholding nearly all internal financial and governance records," the Investment Group conceded Casa Madera produced documents responsive to those four requests: "a general ledger, tax returns, an operating agreement, a single capitalization table, and a single profit and loss statement."

The Investment Group argues that its verified petition was substantial evidence Casa Madera did not fully respond to the inspection request and that it was "undisputed" Casa Madera never provided, as relevant here, "QuickBooks files [and] complete financial statements." That is not the point. Because Casa Madera gave the Investment Group records responsive to these four requests, the Investment Group, to obtain an order requiring Casa Madera to produce more, had to provide evidence Casa Madera had additional, unproduced documents responsive

16

to the requests.  The Investment Group submitted no such evidence.  The Investment Group did not lodge the documents it received to show Casa Madera's response was evasive or incomplete, nor did the Investment Group explain why it believed Casa Madera withheld responsive documents.  For example, though the Investment Group repeatedly asked Casa Madera to provide its QuickBooks files, the Investment Group did not submit any evidence Casa Madera used QuickBooks (or its equivalent) to maintain its financial records.

In the alternative, the Investment Group argues the trial court erred in requiring it to "*prove with evidence*" Casa Madera withheld documents the Investment Group had a right to inspect.  The Investment Group characterizes the court's demand for evidence as imposing "an additional evidentiary burden" and argues "[i]t should, instead, be [Casa Madera's] responsibility to assert, as an affirmative defense, that the documents do not exist, as part of their verified answer."  As discussed, the Investment Group had the burden of proof in the trial court.  (See *American Coatings Assn. v. South Coast Air Quality Management Dist.*, *supra,* 54 Cal.4th at p. 460 ["'[u]nless otherwise provided by law, "the petitioner always bears the burden of proof in a mandate proceeding brought under Code of Civil Procedure section 1085"'"].)  It was entirely proper for the court to require the Investment Group to provide some evidence Casa Madera withheld documents before issuing an order directing Casa Madera to disclose additional documents.

17

D. *The Trial Court Did Not Err in Ruling the Investment Group Was Not Entitled to Documents It Did Not Request*

The Investment Group also argues the trial court erred in denying its request to access documents in categories A, B, and D. The Investment Group concedes it did not include these categories in its inspection request. The Investment Group argues that the requests encompass documents section 17701.13, subdivision (d)(6) and (7), required Casa Madera to maintain and that the Investment Group satisfied section 17704.10 because it "*did identify* these three document requests in the [first amended] [p]etition." The Investment Group is wrong on the law and the facts.

First, a limited liability company's disclosure obligation is triggered by a request from a member. As discussed, section 17704.10 subdivision (a), provides: "*Upon the request of a member . . . , for purposes reasonably related to the interest of that person as a member . . . , a manager . . . shall promptly deliver*" the specified documents. (Italics added.) Similarly, section 17704.10, subdivision (b)(1), states a member "has the right, *upon reasonable request*, for purposes reasonably related to the interest of that person as a member" to inspect and copy certain documents. (Italics added.) The remedial provisions of the Act are available only after a manager or managing member fails to comply with the member's request.

Second, even if a member could request documents for the first time in a petition for writ of mandate, the Investment Group did not make a new request in the petition. The portion of the writ petition cited by the Investment Group states the inspection demand "[i]dentified with reasonable particularity documents or

18

categories of documents falling within the scope of categories of books and records specified in ([Casa Madera's]) Operating Agreement and the above referenced statutes including, but not limited to '([Casa Madera's]) books and records as they relate to the internal affairs or [*sic*] the company for at least the current and past four (4) fiscal years,' '[c]opies of all financials, including but not limited to, all expenses, all revenue, and assets (i.e. balance sheet) and all liabilities and liens,' '[c]opies of the financial statement of ([Casa Madera]), if any, for the six most recent years,' and '[t]he books and records of ([Casa Madera]) as they relate to the internal affairs of ([Casa Madera]) for at least the past four fiscal years.'" (Brackets in original.)  It is unclear what document the Investment Group was quoting in this paragraph of the petition, but the text appears to (inaccurately) describe the inspection request.  It is not a new request directed to Casa Madera.

## DISPOSITION

The judgment is affirmed.  Casa Madera is to recover its costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.                    STONE, J.

19